UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

1:21CR00698-001

v.

MARCOS GLEFFE.
  Defendant.

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, MARCOS GLEFFE, comes now and submits the following:

**I.     Objections to Presentence Report**

The defendant does not object to any fact or factor which would impact the calculation of the appropriate advisory federal sentencing guideline. Further, the defendant does not object to any of the factual assertions in the report.

**II.    Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well. Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)   the need for the sentence imposed—
>   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B)   to afford adequate deterrence to criminal conduct;
>   (C)   to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) the kinds of sentences available;
 (4) the kinds of sentence and the sentencing range established for—
    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
    (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
 (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
 (7) the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A.  Advisory Sentencing Guidelines

This Honorable Court must consider the advisory sentencing guidelines.  The Supreme Court has held that when sentencing, a court must demonstrate that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). " "[A] perfunctory recitation of the defendant's arguments or the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decision making or provide an adequate basis for appellate review." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (internal quotation marks omitted).Further, the district court must provide some individualized assessment "justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010).  A district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (internal citation and quotation marks omitted).

An individualized assessment requires "that district courts consider the defendant's non-frivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* A "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making

authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356).

### B.  § 3553(a) Sentencing Factors

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a).  The defendant submits an application of these factors to the case at bar leads to the conclusion that a sentence within the advisory guideline range (51-63 months) would be greater than necessary.

### 1.  History and Characteristics of The Defendant

The presentence investigative report summarizes Mr. Gleffe's background.  Although the guidelines do not apply to his offense of conviction, an application of the guidelines to his criminal history would produce a category I.  Exclusive of the instant offense Mr. Gleffe has sustained only one other conviction.  That conviction, a 2014 possession of a controlled substance case, resulted in a 30 month probationary sentence.  His criminal history is devoid of any arrests for weapons, firearms, or crimes of violence.

Mr. Gleffe has a modest history with substance abuse.  He consumes alcohol socially and has experimented with recreational drugs.  Intoxication did not play a role in his offense conduct. It does not appear he suffers from a substance abuse problem.  As a consequence there is no need for any sentence imposed to be fashioned to address such a issue.

His mental health issues are limited.   He has been diagnosed with attention deficit hyperactivity disorder.  Although it has been recommended by his physician, the defendant does

not currently take any medication for the disorder. It does not appear that any mental health disorder contributed to Mr. Gleffe's participation in the event at the U.S. Capital on January 6.

Currently, Mr. Gleffe is self-employed. During the pendency of this matter Mr. Gleffe relocated from Illinois to Florida to pursue employment. He is self-employed in the tile industry. His income satisfactorily meets his needs but does not provide sufficient means to address any potential fine to be imposed in this matter.

In summary, Mr. Gleffe a 39 year old male with little to no criminal history. He does not have a debilitating substance abuse problem. His mental health history also should not give this Honorable Court any great concern. His family life and job stability are further support for the conclusion that an any period of incarceration is unwarranted.

    **2.  Nature of the Offense**

Mr. Gleffe acknowledges the nature of the offense. He entered a plea of guilty and embraced the statement of offense filed in conjunction with her plea agreement with the government. The events of January 6, 2021 were disturbing to our nation. Mr. Gleffe understands that he unfortunately played a role in the events. He regrets his behavior.

Mr. Gleffe, like millions of Americans, became convinced that the results of the 2020 presidential elections were the results of fraud. This belief was fueled by Congressional leaders and the President of the United States. Mr. Gleffe's original intent was to simply attend the demonstration at the United States Capitol. It was not to participate in a violent attack on the Capitol. Unlike others, Mr. Gleffe was unarmed. He was not a part of any organized pre-

planning to attack the Capitol. Mr. Gleffe's actions were primarily motivated by his curiosity and desire to witness the event firs-hand as they unfolded.

On January 6, 2021 Mr. Gleffe, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol. This Honorable Court is all too familiar with what would soon follow. It is noteworthy that Mr. Gleffe did not participate in the physical breach of the Capitol. He entered the Capitol after others had caused the breach. Once in the Capitol Mr. Gleffe is not charged with assaulting anyone.

### 3. Need to Deter

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*.

While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

On September 8, 2021 Mr. Gleffe was placed on pretrial supervision. For approximately 15 months he has remained under restrictions imposed by this Court. During that time he has not been subject to any arrest. He has complied with all substance abuse testing. The restraints on his liberty has been consequential. It provides more than adequate specific deterrence for Mr. Gleffe. Most significantly he will forever be reminded of his role in one of the darkest days in our country's history. It is something that he will be confronted with for the rest of his life.

### 4.     Need to Avoid Unwarranted Disparities

This Honorable Court must remain mindful of the need to avoid unwarranted disparities between similarly situated defendants.  The government advocates for a sentence of 45 days of incarceration. The presentence report writer recommends a sentence of probation.  Again, the advisory guidelines do not apply.  Mr. Gleffe's convictions are misdemeanors.  In determining an appropriate sentence Mr. Gleffe urges this Honorable Court to examine and consider other sentences imposed on defendants convicted of criminal offenses connected with January 6.

Again, Mr. Gleffe is not before the Court on a felony conviction.  His offense did not involve any acts of violence.   He has one prior conviction.   Consistent with the sentences imposed by on other similarly situated January 6 defendants it is clear that a sentence of probation is appropriate.

There is no legitimate reason to treat Mr. Gleffe significantly harsher than others who have been held accountable for their participation in the January 6 events.   Yes, Mr. Gleffe violated the law.  However, he did not physically attack any law enforcement officers.  He did not directly cause any bodily injury to any law enforcement officers.   He does not stand convicted of a conspiracy offense.  He did not possess or employ any weapons.

This Honorable Court is well aware that many of those convicted of January 6 offenses possessed weapons.   Many employed pepper and bear spray.   Some offenders used other weapons against law enforcement.  All of these actions are far more serious transgressions that those performed by Mr. Gleffe.  His punishment should be reflective of his actions and should be imposed with an understanding of the treatment of others.

### C. Recommended Sentence

Mr. Gleffe submits a sentence of probation would satisfy the legitimate goals of sentencing. Such a sentence followed by a period of supervised release would be consistent with other sentence imposed in those convicted of criminal violations arising out of the January 6 events at the Capitol.

### III. Conclusion

Wherefore the defendant, **MARCOS GLEFFE**, respectfully requests that this Honorable Court sentence to a period of probation.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant MARCOS GLEFFE

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on December 10, 2022.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law

1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant MARCOS GLEFFE